THE FIRST NATIONAL BANK OF PORTLAND, A CORPORATION, EXECUTOR, ESTATE OF L. B. STEARNS, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92288. Promulgated April 25, 1939.

*Earl S. Nelson, Esq.*, for the petitioner.
*John H. Pigg, Esq.*, for the respondent.

## OPINION.

STERNHAGEN: The Commissioner determined the deficiency for each of the three calendar years 1934, 1935, and 1936, by adding to Stearns' individual income the amounts set forth in the findings, which he called "income from fiduciary." He explained his determination as follows:

The contention that L. B. Stearns never accepted or received in his individual capacity any income derived from the estate of Mary F. Stearns, deceased, has been denied.

It is noted you state that to constitute constructive receipt "the income must be credited or set apart to the taxpayer without any substantial limitation."

Under the provisions of article 162–1 (2) of Regulations 86, it is stated:

"Any income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to a beneficiary, whether or not such income is actually distributed."

The disclaimer executed by L. B. Stearns was not filed until May 6, 1936. The agent is sustained in holding that the residuary income from the fiduciary is taxable income to L. B. Stearns.

The determination is thus based squarely upon section 162 of the Revenue Act of 1934, and upon the postulate that the trust income above $900 a month was "to be distributed currently by the fiduciary to the beneficiary." The taxpayer contends that Stearns' disclaimer became effective before the three taxable years in question, and hence that the trust income was not "to be distributed currently" to him.

The Commissioner, however, answers that the only cognizable disclaimer is found in the written instrument of May 6, 1936; that until that instrument was executed Stearns was entitled to the distribution according to the will, and that being so entitled he is taxable thereon irrespective of whether he chose as a beneficiary not to receive and as a trustee not to distribute. Thus the question is narrowed to whether there was an effective disclaimer prior to the execution of the written instrument of May 6, 1936.

A beneficial interest under a trust may be disclaimed, Restatement of the Law of Trusts, section 36 (c), and the disclaimer may be expressed in writing, orally, or by conduct, so long as it is unequivocal, *Blake* v. *Blake*, 147 Oreg. 43; 31 Pac. (2d) 768. Furthermore, it may operate retroactively so as to obliterate *ab initio* the rights which it disclaims, *Lehr* v. *Switzer*, 213 Iowa, 658; 239 N. W. 564. While a disclaimer is not lightly to be recognized, *Chilcoat* v. *Reid*, 140 Atl. 100 (Maryland 1928), recognition of it may not be withheld when the evidence is clear, consistent, and undisputed. If there be any wavering by the beneficiary, and if the renunciation be not clear and definitive, he must accept the burdens of the trust which are incident to the benefits it bestows upon him.

By the evidence in the present case it appears that, shortly after his wife's death in 1933, Stearns clearly told two officers of the bank that he intended to take none of the income which was provided for him under the will. One testified:

From the beginning Judge Stearns told me in very certain terms that he never would take any part of the income that was coming to him [under the will], didn't intend to, he had enough of his own, he wanted no part of her property whatever.

Q. Did he say that to you more than once?
A. Yes, I wouldn't undertake to say how many times, but many times.

The other testified:

Q. Did Loyal B. Stearns make any statement to you with regard to that particular provision of the will which I have just mentioned and the income thereunder?
A. Yes.
Q. What did he say with reference to accepting any income which might have been available, or might at some time be available under the provisions of this will of Mary F. Stearns, the particular provision I have just mentioned to you?
A. He stated that he would accept none of it.
Q. Did he make this statement to you on more than one occasion?
A. Yes.

Stearns in fact took none of the income from the trust, and, acting as the fiduciary, he made no distribution thereof to himself as beneficiary. This was the state of affairs throughout the taxable period, and unless we are to be unwarrantably skeptical, it indicates

that by words and conduct there was a disclaimer. Later, on May 6, 1936, Stearns confirmed his renunciation by the written instrument whereby he disclaimed not only his present and future rights but also "all past rights." Then Stearns died, without having said or done anything in the slightest degree at variance with this renunciation and never having received any of the trust income. Thereafter the successor trustee sought from the state court a decree as to its powers and rights under the trust, and the court, on September 30, 1936, in explicit findings, conclusions, and decree, held that the plaintiff was entitled to administer the trust, the corpus of which then included the accumulated income which under the will might, but for the disclaimer, have gone to Stearns, and that Stearns had no right thereto and had validly disclaimed all rights to income from the estate. While the decree was entered after default of the defendants, this does not derogate from its authority. It must receive here unstinted respect, *Freuler* v. *Helvering*, 291 U. S. 35; *Blair* v. *Commissioner*, 300 U. S. 5.

The Commissioner argues that until the written disclaimer of May 6, 1936, Stearns had the election between acceptance and disclaimer under the trust, and therefore during this period of election the income must be regarded as distributable to him. This view, however, does not accord adequate weight to the evidence of oral disclaimer operative from the beginning, nor does it give due respect to the decree of the state court. Obviously Stearns could have avoided all doubt by executing the formal written disclaimer at once, and his omission to do so involved the risk of failure of evidence to establish the disclaimer. But such credible evidence as there is may not be disregarded or given less than full weight, since it is uncontradicted.

In view of the disclaimer, it must be concluded that Stearns in 1934, 1935, and 1936 had no right to receive the trust income which the Commissioner has attributed to him, cf. *Freuler* v. *Helvering*, *supra*, and that it can not correctly be described in the language of the statute as income of the trust which was to be distributed to him currently. He was no more the beneficiary after the effective disclaimer than he would have been after an assignment. Cf. *Blair* v. *Commissioner*, *supra*.

Strangely neither party has introduced or made reference to the returns of the fiduciary which under the statute are necessarily correlative with those of the income beneficiary—the beneficiary must return the distributable income which the fiduciary may deduct, *Helvering* v. *Butterworth*, 290 U. S. 365; *Commissioner* v. *Dean*, 102 Fed. (2d) 699; *Old Colony Trust Co. et al., Executors*, 38 B. T. A. 828. But since Stearns as beneficiary did not include any trust

833

income in his individual returns, it may properly be assumed that as trustee he consistently included such income in his fiduciary returns without deduction, or else that, in view of the *prima facie* case which petitioner has made, the respondent would have gone forward and produced the inconsistent fiduciary returns which had been filed and which presumably were available to the Government.

The determination is reversed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

BLACK, dissenting: In my opinion, the only effective disclaimer executed by the taxpayer was the one which he executed in writing on May 6, 1936. Moreover, I think such is the effect of the holding of the Circuit Court of Oregon for the County of Multnomah in the proceeding entitled *The First National Bank of Portland* v. *Mary Helen Clair et al.*

The court in its decree, following certain findings of fact and conclusions of law, entered September 30, 1936, refers to only one disclaimer and that was the one which petitioner executed May 6, 1936. The court, speaking of this disclaimer, said: "And that the said Loyal B. Stearns, by a valid and legal instrument in writing, disclaimed, disowned and renunciated all rights, titles, or interests in or to the estate and/or income from the estate of Mary F. Stearns, deceased."

It may well be that this disclaimer of May 6, 1936, which was unquestionably valid, divested petitioner of all interest in the income of the estate both retroactively and prospectively, as between the parties interested in the income under the will of Mary F. Stearns. The disclaimer could not have any effect, however, on petitioner's income tax liability for 1934 and 1935. The income tax liability of petitioner in those two years was fixed by rights and liabilities which existed in those two years and not by what took place in 1936.

The scheme of the income tax law is to levy income taxes on an annual basis. That proposition is so well established that no citation of authorities on that point seems necessary.

The majority opinion, speaking of the effect of a disclaimer, says: "Furthermore, it may operate retroactively so as to obliterate *ab initio* the rights which it disclaims." (Citing authorities.) As already stated, that is doubtless true as between the parties, but not as to income tax liability.

For the reasons stated, I respectfully dissent from the majority opinion.

SMITH, MURDOCK, ARNOLD, and DISNEY agree with this dissent.