**In the Matter of the ESTATE OF Bessie PREHODA, Deceased.**

**Janice GRIMM, Individual and Janice Grimm, As Next of Friend to Denise Grimm, Diane Grimm, and Douglas Grimm, Plaintiffs-Appellees,**

v.

**Paul M. SCHERRER, Executor of the Estate of Bessie Prehoda, Deceased; and Edward P. Scherrer, Beneficiary of the Estate of Bessie Prehoda, Deceased, Defendants-Appellants.**

**No. 2–64665.**

Court of Appeals of Iowa.

March 24, 1981.

Tom Riley, and Gregory M. Lederer of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for defendants-appellants.

Donald B. Clark of Norton, Freese, Zearly & Bates, Lowden, for plaintiffs-appellees.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

PER CURIAM.

Defendants, executor, Paul M. Scherrer, and beneficiary, Edward P. Scherrer, appeal from trial court's order rejecting their claims asserted in response to plaintiffs' petition to set aside probate of a will under section 633.308, The Code 1979. Defendants claim 1) that plaintiffs' action is precluded by a 1965 joint and mutual will executed by decedent, Bessie Prehoda, and her predeceased husband, Wesley, and 2) that plaintiffs are bound by the 1966 probate proceedings of Wesley's estate in which the joint will was determined to be mutual and contractual. We reverse trial court's order and remand this case for further proceedings in plaintiffs' action.

Decedent Bessie Prehoda died on March 21, 1978; Wesley died on December 26, 1965. The marriage produced no children; however, Wesley had a daughter, Dorothy, by a previous marriage. Dorothy, who died in 1954, was the first wife of defendant, Paul Scherrer. The marriage of Dorothy and Paul produced two children: plaintiff, Janice Grimm; and co-defendant, Edward Scherrer, the main beneficiary under decedent's will at issue in this case. In 1965, decedent and Wesley executed a joint will in which they devised all their personal and real property to each other. On the death of the survivor, each of their three great-grandchildren (Janice's children) was to receive $1,000. The remainder of the estate was bequeathed to defendant Edward Scherrer. The will also contained the following language:

It is expressly understood and it is our will that the survivor, shall have power and authority to sell any property excepting the home farm of approximately 140 acres … *and the survivor shall neither sell nor change the will as to this home farm.* (emphasis added).

Decedent was executrix of Wesley's estate and, in her final report, stated that, as surviving spouse, she accepted a life estate in the home farm with the remainder to Edward. The probate court approved the final report on July 28, 1966, and granted decedent the authority to sell any of the property "excepting the home farm described in said report."

Decedent executed the will at issue here on August 7, 1976. As per the 1965 joint will, she gave $1,000 to each of Janice's three children and her real property (including the home farm) to Edward. She bequeathed the remainder of her personal property in equal shares to Edward and Janice. The will named defendant Paul Scherrer as executor. Decedent died in 1978.

Janice, in her individual capacity and as next friend to her three minor children, filed the present petition to set aside the probate proceedings on October 18, 1978. The petition alleged that the 1976 will was the product of defendant Edward Scherrer's undue influence over decedent and that decedent was incompetent and incapable of making and executing a will in 1976. Defendant executor's answer, filed November 6, 1978, affirmatively alleged that decedent was competent and was not unduly influenced by anyone when she executed the 1976 will. Defendant also alleged that the devise of realty to Edward was required under the 1965 joint will and that this was sanctioned by the 1966 probate proceedings regarding Wesley's estate.

Trial court entered its findings of fact, conclusions of law and order on January 28, 1980. It held that the 1965 joint will was not mutual or contractual and that decedent, therefore, was not required to follow the terms of the 1965 instrument. It also held that plaintiff was not barred from pursuing this action by the 1966 probate proceedings. On March 17, 1980, the Iowa Supreme Court granted defendant permission to appeal the order of January 28th.

■ **I. Procedural Overview.** At the outset, we deem it necessary to consider the appropriateness of any adjudication of the issue which has been thrust upon us by stipulation of the parties. The existence of a prior contractual will has been held to be a matter not affecting the right to probate a later will. Claims based on the contractual provisions of the prior will must be asserted, if at all, by a suit for damages or by impressing a trust on the testator's property passing under the second will for the benefit of those favored in the prior contractual will. *In the Matter of the Estate of Chapman*, 239 N.W.2d 869, 872–73 (Iowa 1976); *Estate of Randall v. McKibben*, 191 N.W.2d 693, 701 (Iowa 1971).

■ For this reason, we believe the issues presented are foreign to the will contest case before the court and should not have been considered as part of that litigation. The parties could have raised the issue of whether the 1965 joint will was contractual by means of a declaratory judgment action. For this reason we treat the trial court's order from which this appeal has been taken as a declaratory judgment authorized pursuant to section 633.11, The Code. In so doing, however, we express no opinion on how this collateral ruling may affect the merits of the underlying will contest case.

**II. Scope of Review.** The case having been tried at law in the court below, our review is on error assigned. Iowa R.App.P. 4.

■ **III. Preclusive Effect of 1966 Probate Proceedings.** Defendants claim that the 1966 probate proceedings conclusively determined the effect of the 1965 joint will, i. e. that the will was mutual and contractual, and that plaintiffs are precluded from attacking decedent's will at this time. We disagree.

The record of the 1966 proceedings contains nothing which would indicate that the issue of the mutual or contractual nature of the joint will was ever fully and fairly examined and determined by the probate court. The fact that decedent indicated in her final report as executrix of Wesley's estate that she had a life estate in the farm home with remainder to Edward does not mean that the mutuality issue was before that probate court. On this meager record, we cannot find that plaintiffs are precluded from litigating the validity of the 1976 will.

■ Nor do we believe that section 633.-487, The Code, bars this action. That section provides in part as follows:

No person, having been served notice of the hearing upon the final report and accounting of a personal representative or having waived such notice, shall, after the entry of the final order approving the same and discharging the said personal representative have any right to contest, in any proceeding, other than by appeal, the correctness or the legality of the inventory, the accounting, distribution, or other acts of the personal representative, or the list of heirs set forth in the final report of the personal representative. . . .

Although plaintiff apparently received notice of the hearing on the final report in her capacity as next friend to her three minor children, we find nothing in the record to establish notice to her in her individual capacity. We further agree with trial court's position that section 633.487 limits only the right to challenge acts of the personal representative or the list of heirs in the final report. We also find no support for defendants' position in the 1966 probate court's approval of decedent's final report. Such approval meant nothing more than that decedent as executrix gave a proper accounting and was entitled to be discharged. *See McGarry v. Mathis*, 226 Iowa 37, 43, 282 N.W. 786, 789 (1939). *Compare In re Estate of Jarvis*, 185 N.W.2d 753 (Iowa 1971) (administrator is precluded from pursuing an action against his brother on claims detailed in special administrator's final report which claims were fully and fairly investigated and decided by such report which was then approved by probate court's final decree). We conclude the probate court in this case correctly found that plaintiffs are not precluded from maintaining this action to set aside decedent's will.

**IV. Mutuality of the 1965 Joint Will.** Defendants also argue that decedent's 1976 will is immune from attack because its dispositive provisions, especially as to the "home farm," were mandated by the 1965 joint will which defendants claim to be mutual and contractual. For the reasons stated in division I of this decision, we do not determine whether a prior contractual will renders a subsequent will immune from attack, but we do decide whether the prior will was in fact contractual. Trial court concluded that the 1965 will was not mutual because it did not clearly and expressly state the testators' intent that it was to be a mutual or contractual will. We must disagree with trial court.

We begin our analysis with section 633.-270, The Code 1979, which states: "No will shall be construed to be contractual or mutual, unless in such will the testator shall expressly state his intent that such will shall be so construed." Extrinsic evidence may not be introduced to prove such intent; such evidence must be found in the instrument itself. *Matter of Estate of Chapman*, 239 N.W.2d 869, 871 (Iowa 1976). It is clear from the case law both before and after the enactment of this statute that the word "mutual" as used therein means contractual. *See e. g. Id.* at 871–72 and citations. Thus, the cited code section deals entirely with contractual wills in which there has been "a binding agreement as to the disposal of the property of the makers in a certain way." *Id.* at 871.

 Giving this construction to the statutory requirement, it follows that the intent which must be expressly stated in the will in order to comply with section 633.270 is the intent to bind the joint testators to dispose of their property in a certain way. In the present case, such intent is communicated with respect to the home farm by the language "the survivor shall neither sell nor change the will as to this home farm." Clearly, the legal effect of such language is to provide for disposition of the home farm in a certain way. A contractual will may be enforced as to a single asset. *Estate of Randall v. McKib-*

*ben,* 191 N.W.2d 693, 701 (Iowa 1971). We therefore find that this provision of the 1965 will satisfies the requirements of the statute, that the agreement is founded on sufficient consideration, and that the trial court's order should be reversed to the extent it found that the 1965 joint will was not contractual.

REVERSED AND REMANDED.